IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANTHONY KENDRICK, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:14-cv-112 (LJA) (CHW) |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

### REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Anthony Kendrick's application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

### BACKGROUND

Plaintiff claims to suffer from both left brachial plexus palsy and an impaired intellectual capacity. (R. 42–43). In addition, Plaintiff claims to suffer from depression resulting from his struggle with these underlying impairments. (R. 380). Plaintiff applied for Title XVI benefits in October 2010, but his application was denied initially and on reconsideration. (R. 76–77). In September 2012, Plaintiff testified at a hearing before a reviewing Administrative Law Judge ("ALJ"). Plaintiff indicated that he did not "go to any mental health clinic or anything," (R. 45), but Plaintiff did testify that his treating physician, Dr. Wayne Dodgen, had recently prescribed anti-depressant medication. (R. 45). The record also contains a consultative psychological evaluation in which Dr. Guy Seymour, Ph.D., suggested that Plaintiff's depression could cause functional limitations in addition to those caused by Plaintiff's brachial plexus palsy and

1

impaired intellectual capacity. (R. 383). Specifically, Dr. Seymour indicated that Plaintiff, due to his depression, might struggle to maintain a work schedule, might have difficulty getting along with others, might be unable to meet production norms and to complete tasks, and that he might be unable to cope with workplace stress. (*Id.*).

In September 2012, the ALJ found that Plaintiff was not "disabled." (R. 24–33). In assessing Plaintiff's residual functional capacity, the ALJ gave "some weight to Dr. Seymour's opinion, because it is generally consistent with the evidence of record." (R. 31). The ALJ concluded, however, that there was "no evidence demonstrating that the claimant's depressive symptoms, which were never mentioned prior to the evaluation, reduce the claimant's functional capacity." *Id*.

Plaintiff now seeks judicial review, arguing that the ALJ, in finding that Plaintiff was not disabled, erred by (1) improperly disregarding the evidence relating to Plaintiff's depression, and by (2) improperly discounting Plaintiff's credibility. Because the ALJ provided satisfactory reasons for discounting the evidence of depression, and because substantial evidence supports the ALJ's credibility findings, it is recommended that the Court affirm.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the

Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISAIBLITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## DISABILITY EVALUATION IN THIS CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 7, 2010, his application date. (R. 26). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "left brachial plexus; left shoulder, arm, and hand pain; obesity; depressive disorder; and borderline intellectual

functioning." (R. 26). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 26). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform:

> light work as defined in 20 CFR 416.967(b) except he should avoid the use of his left upper extremity; he is able to frequently climb ramps and stairs but never ladders, ropes or scaffolds; he is able to frequently balance, stoop, kneel, and crouch but should never be required to crawl; he is unable to reach, handle, finger, and feel with his left upper extremity; he should have no exposure to hazards; he is able to understand, remember, and carry out very short simple instructions but not detailed; he is able to maintain attention and concentration for two hour blocks of time; he is able to complete the workday and workweek without interruptions from psychological symptoms; he is able to interact with the general public but limit interaction to no more than frequently; he is able to respond appropriately to criticism from supervisors; he is able to get along with coworkers but limit interaction to no more than frequently; he is able to respond to changes in the workplace; he is able to set realistic goals or make plans independently of others; and he would work best in a low demand setting.

(R. 28)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. 31). At step five, though, the ALJ determined that Plaintiff could perform the requirements of representative occupations like "lobby attendant," "proof reader helper," and "flagger." (R. 32). As a result of these step-five findings, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Social Security Act.

**ANALYSIS**

Plaintiff raises two grounds for relief, neither of which warrants a remand in this case. Plaintiff first argues that the ALJ erred by improperly disregarding the evidence relating to Plaintiff's depression. Specifically, Plaintiff argues that the ALJ erred in discounting, in part, a May 2011 psychological evaluation report completed by Dr. Guy Seymour, Ph.D., a consultative examiner. (R. 376–83). The record shows, however, that the ALJ's consideration of Dr. Seymour's report was supported by substantial evidence. The ALJ appropriately cited the lack of prior treatment for depression in discounting Dr. Seymour's report. (R. 29) ("there is no evidence suggesting the claimant has sought mental health treatment"). *Cf. Manzo v. Comm'r*, 408 F. App'x 265, 269 (11th Cir. 2011) (citing the lack of prior mental health treatment in support of the conclusion that an alleged mental impairment was not "severe"). The records of Plaintiff's primary care physician, Dr. Wayne Dodgen, contain no indication of any complaints related to depression. (R. 445-465). There is no medical evidence in Dr. Dodgen's records or elsewhere in the record to support Plaintiff's testimony that he was prescribed medication for his depression. At the administrative hearing Plaintiff acknowledged that he had not sought treatment for his alleged depression. *See* (R. 45) (Q: "Do you go to any mental health clinic or anything of the kind? A: No, sir.").

The only medical evidence related to depression is thus in the report of Dr. Seymour, based on a single examination. Dr. Seymour conducted a consultative psychological evaluation of Plaintiff in May 2011, finding that Plaintiff appeared to "experience[e] emotional distress as a result of his physical limitations [and] cognitive delays," and diagnosing Plaintiff with "Depressive Disorder NOS." (R. 380, 382). Dr. Seymour opined that Plaintiff might struggle to maintain a work schedule, to get along with others, to meet production norms and complete

5

tasks, and to cope with stress, all due in part to his depression. (R. 383). Dr. Seymour further suggested that Plaintiff "may need to consult a psychiatrist for possible medication management of his depressive symptoms," and that Plaintiff "would benefit from individual therapy in order to address his socialization issues, and to assist the claimant in managing his depressive symptoms." (*Id.*).

Two separate consultants reviewed Dr. Seymour's report and prepared mental residual functional capacity assessments. Sylvia Robles-Meyers, MD, noted moderate, but not substantial limitations in ability to understand and remember detailed instructions and ability to sustain concentration for extended periods. (R. 401). She also noted "occasional limitation in his ability to interact with the general public" and "some problems responding appropriately to criticism from supervisors and relating to coworkers," but observed that neither limitation was substantial. *Id*. She concluded that Plaintiff was "able to maintain basic social interactions" and should be able to handle criticism "well enough to function on a job." *Id*.  Linda O'Neill, Ph.D., similarly noted certain moderate limitations in understanding and memory and in sustained concentration and persistence, but concluded that Plaintiff was "not substantially limited" and could do "simple tasks" working in "a fairly low-demand setting." (R. 431-33).

The ALJ adequately accounted for Dr. Seymour's findings in his RFC consideration, in which he determined that Plaintiff

> is able to understand, remember, and carry out very short simple instructions but not detailed; he is able to maintain attention and concentration for two hour blocks of time; he is able to complete the workday and workweek without interruptions from psychological symptoms; he is able to perform at a consistent pace without an unreasonable number and length of rest periods; he is able to interact with the general public but limit interaction to no more than frequently; he is able to respond appropriately to criticism from supervisors; he is able to get along with coworkers but limit interaction to no more than frequently; he is able to respond to changes in the workplace; he is able to set realistic goals or make plans independently of others; and he would work best in a low demand setting.

6

(R. 28). Because this RFC finding is supported by substantial evidence in the record, a remand is not warranted.

Plaintiff's second ground for relief, that the ALJ erred in his credibility analysis, is similarly not supported by the record. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). With regard to the "pain and tingling" in Plaintiff's left arm, the ALJ accommodated the functional limitations associated with Plaintiff's left brachial plexus palsy by finding that Plaintiff "should avoid the use of his left upper extremity." (R. 28). Additionally, while the ALJ appears to have erred in stating that only one treatment record shows that Plaintiff was prescribed pain medication, (R. 30)—there are in fact several such records, *see* (Doc. 10, pp. 20–21)—the ALJ properly noted that despite Plaintiff's allegations of pain, Plaintiff's treating physician found that Plaintiff's functional limitations were nevertheless minimal. (R. 30) ("little to no objective medical evidence support[s] the claimant's allegation of significant pain limiting him to being unable to perform some work activity"). The ALJ did not err in relying on this treating-physician opinion to discount Plaintiff's subjective allegations of pain.

With regard to Plaintiff's diminished mental capacity, Plaintiff argues that he is not, in fact, able to function independently. (Doc. 10, p. 22). This argument, however, essentially asks the Court to reweigh the evidence, something the Court cannot do. Because the ALJ accurately noted that the record contains consistent medical diagnoses—including a diagnosis from Dr. Seymour, (R. 383)—of borderline intellectual functioning, as opposed to full-fledged mental retardation, and because, additionally, the ALJ accurately noted that Plaintiff is able to perform a wide-range of activities, such as following routines and simple directions and driving, which are "inconsistent with being unable to function independently," (R. 30), there is no basis for the Court to second-guess the ALJ's credibility findings with regard to Plaintiff's mental capacity.

Finally, with regard to Plaintiff's depression, Plaintiff does not satisfy the "*Holt* pain standard" because no non-discounted medical evidence indicates that Plaintiff's depression causes limitations in excess of those already proposed by the ALJ. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). *Holt* requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* at 1223. Although Plaintiff cites to his own adult function report, (Ex. 7E), and to his own administrative-hearing testimony, (R. 45), no objective medical evidence, other than Dr. Seymour's report, indicates that Plaintiff's depression might cause significant functional limitations in addition to those caused by his brachial plexus palsy and impaired intellectual capacity. (R. 383). Because, as indicated above, the ALJ properly discounted Dr. Seymour's report, Plaintiff has not demonstrated that he satisfies the requirements of the *Holt* pain standard with regard to his allegations of depression.

In summary, because the ALJ articulated adequate reasons for discounting Dr. Seymour's opinion, and because substantial evidence supports the ALJ's credibility findings, it is recommended that the Court affirm.

## **CONCLUSION**

After a careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a *de novo* determination of those portions of the Recommendation to

which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 30th day of June, 2015.

                                             s/ Charles H. Weigle
                                             Charles H. Weigle
                                             United States Magistrate Judge